UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CLARENCE FRANK STEPHENSON,

    Plaintiff,

v.                                Case No. 3:11cv455/RV/CJK

D. ELLIS, et al.,

    Defendants.

_____/

ORDER and AMENDED
REPORT AND RECOMMENDATION[1]

    This cause is before the court upon plaintiff's first amended civil rights complaint filed under 42 U.S.C. § 1983.  (Doc. 27).  Upon initial review of the complaint, the court found that the facts, as presented, failed to support a viable § 1983 claim against several of the named defendants.  The court also found that plaintiff appeared to be precluded from recovering the relief he sought.  The court thus provided plaintiff an opportunity to correct the deficiencies and clarify his allegations in an amended complaint. Upon review of plaintiff's amended complaint, in which plaintiff essentially reiterates the allegations set forth in his initial

---

[1] This amended Report and Recommendation differs from the original Report and Recommendation (doc. 28) only with respect to the correction of typographical errors.

complaint, the court concludes that this case should be dismissed against defendants Ellis, McNeil, Raybon, John Doe (captain), Austin, and McArthur, because plaintiff has not presented a plausible claim for relief against those defendants.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, an inmate with the Florida Department of Corrections ("DOC"), is currently confined at Union Correctional Institute ("Union"). Plaintiff names nine defendants in this action: Florida Department of Corrections Secretary Walter A. McNeil, Santa Rosa Correctional Institution Warden David Ellis, John Doe, Correctional Lieutenant Walter Gielow, Correctional Sergeant F.R. Given, Correctional Sergeant Steven Thomas, Correctional Officer G. Raybon, Correctional Nurse D. Austin, and Correctional Nurse David McArthur. (Doc. 27, pp. 2-4). Plaintiff sues the defendants in their individual and official capacities. On September 5, 2007, while confined at the Santa Rosa Correctional Institution ("Santa Rosa CI"), plaintiff called defendant Raybon to his cell to ask him about his "legal deadline materials provided to the law clerk on [September 4, 2007] to take to the library for copying services." (Doc. 27, p. 14). Defendant Raybon informed the plaintiff that there was "nothing he could do" and plaintiff should discuss his concerns with the law library. Plaintiff then called defendant Given to his cell and explained "his situation." In turn, defendant Given told defendant Raybon to call the law librarian and inquire about the status of plaintiff's motion. After speaking with the law librarian, defendant Raybon informed plaintiff that the librarian stated plaintiff had fifty days to file his motion with the court. Defendant Raybon then asked plaintiff why he waited so long to file his motion. As defendant Raybon was leaving, defendant Gielow told him to write plaintiff a "bogus" disciplinary report.

Defendant Gielow walked to plaintiff's cell and told plaintiff, "I have no rap for you. I wanna gas your ass for writing complaints against Lt. Swartz." (Doc. 27, p. 14).

On September 9, 2007, defendant Thomas conducted an investigation into the disciplinary report written by defendant Raybon. Plaintiff informed defendant Thomas that the disciplinary report was false and was written in retaliation for plaintiff's filing of complaints against staff. (Doc. 27, p. 15). On September 11, 2007, plaintiff filed a grievance "directly with defendant Ellis informing him of defendants Gielow and Raybon's action . . . ." Two days later, on September 13, 2007, defendant Gielow filed a false disciplinary report against plaintiff alleging that plaintiff was screaming in his cell at an unidentified inmate. Plaintiff was subsequently found guilty at a disciplinary hearing and sentenced to thirty days confinement.

On September 14, 2007, defendant Gielow came to plaintiff's cell at 6:13 a.m. and told plaintiff, "get ready, I'll be back." Around 8:16 a.m., defendants Gielow and Given returned to plaintiff's cell and told him, "get ready. We about to spank you in a few minutes." At 8:42 a.m., defendants Gielow and Given came back to plaintiff's cell "to make it appear on the . . . video that they were counseling plaintiff." At 8:48 a.m., defendants Gielow and Given administered chemical agents directly to plaintiffs face and uncovered skin. Plaintiff alleges he suffered "intense physical pain, burning sensation in the mucous membranes, involuntary closing of eyes, gagging, paralysis of the larynx, disorientation, anxiety, and panic" because of his exposure to the pepper spray. (Doc. 27, p. 16). At 9:00 a.m. and 9:20 a.m., defendants Gielow and Given administered additional chemical agents into plaintiff's cell, despite plaintiff "not engaging in any disorderly behavior." Plaintiff begged the defendants to stop,

but defendants refused. At 9:30 a.m. defendant Gielow ordered plaintiff to leave his cell, but plaintiff refused to leave and stayed in his cell for an hour. At 9:40 a.m.,[2] officers Wilson and Dorn came to plaintiff's cell and escorted him to the shower so that he could wash the chemical agents out of his skin and hair. Defendant Gielow walked in and told plaintiff, "I wanna gas you again today. Are you with it?" Plaintiff asked defendant Gielow why he was "retaliating against [him]" and defendant Gielow responded, "because you're a piece of shit. You wrote all them grievances on staff and now you got the (Warden) upset with you."

Plaintiff alleges that he "continued to suffer from exposure to gas for two more weeks including severe skin burns, peeling of the skin, frequent burning of the body, and intense physical pain." (Doc. 27, p. 18). Plaintiff posits that he was only given a few seconds in the shower and was not allowed to "properly decontaminate." Plaintiff then alleges he was denied medical treatment. Following his shower, plaintiff was taken to see defendant nurse Austin. Plaintiff told the nurse he was "burning so badly" and needed to wash himself off, but nurse Austin instead told defendant to sign up for sick call if he wanted to be seen by medical staff. While plaintiff was undergoing a physical, defendant Gielow ordered all of plaintiff's property to be taken out of his cell, except for a pair of boxer shorts. Plaintiff was then placed on "strip" and property restriction for seventy-two hours in retaliation for his filing of various complaints. Because plaintiff was on property restriction, he "was forced to sleep on a steal [sic] bunk in a very cold cell." At 2:50 p.m., defendant Gielow approached plaintiff's cell and told him to "say you sorry on the witness statement form in the use of force" incident. Ten minutes later, the housing sergeant

---

[2] The court notes that plaintiff's indicated time frame is not consistent.

brought plaintiff a use of force statement to sign. Plaintiff did not sign the form and instead wrote that he could not make a statement because his "life's in danger."

On September 17, 2007, defendant Thomas came to plaintiff's cell. Plaintiff asked whether he could get his confiscated items back. In response, defendant Thomas asked if plaintiff was still on "strip." At 8:46 a.m., defendant Gielow told plaintiff that if he "ke[pt] up the disturbance chemical agents will be used to quell the disturbance." At 9:30 a.m., defendants Thomas and Gielow administered chemical agents to plaintiff and plaintiff's cell. Because plaintiff was burning so badly from the chemical agents, plaintiff pulled the fire sprinkler. At 10:00 a.m., plaintiff was again sprayed with additional chemical agents. Plaintiff called over defendant John Doe and told defendant John Doe that he was being abused for filing grievances. In response, defendant John Doe told plaintiff that he would be "burning more in a minute" and that plaintiff would receive an outside charge for the sprinkler system. (Doc. 27, p. 20). Plaintiff was then gassed again at 10:25 a.m. Between 10:30 and 10:45 a.m., plaintiff was taken to the shower. Following the shower, plaintiff was taken to see defendant nurse McArthur, who "denied plaintiff's request to shower and refused to provide him any medical treatment." (Doc. 27, p. 20). Instead, defendant McArthur told plaintiff to report to sick call. Plaintiff was again placed on "strip" and not allowed to request sick call. As a result of the "excessive gas plaintiff suffered burning in and swelling around the eyes, bleary vision in addition to what he suffered" from the previous use of chemicals against him. Following these incidents, defendant Thomas wrote three disciplinary reports against plaintiff. Defendant Thomas indicated that plaintiff was yelling and kicking his cell door, broke a sprinkler head, and attempted to assault a staff member with a rag. (Doc. 27, p. 21).

Plaintiff claims he could not have attempted to assault a staff member with a rag because he was on strip and was wearing only boxer shorts. Plaintiff was later found guilty of these offenses after a hearing.

As a result of the foregoing conduct, plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights. Specifically, plaintiff claims defendants Gielow, Raybon, Given, Thomas, and John Doe "unjustifiably administered or ordered the administration of excessive chemical agents, strip in a very cold cell repeatedly in retaliation for plaintiff's lawful exercise of rights, and failing to intervene . . . in the physical abuse of plaintiff." (Doc. 27, p. 22). Plaintiff also contends defendant Ellis is liable for negligent supervision or retention because Ellis "was deliberately indifferent to longstanding and widespread abuse at Santa Rosa Correctional Institution." Plaintiff then alleges defendants Austin and McArthur are liable for their failure to treat plaintiff's injuries. (Doc. 27, p. 24). Finally, plaintiff contends defendants McNeil and Ellis were aware of the abuse at the Santa Rosa CI and failed to correct it through further training, supervision, or discipline. (Doc. 27, p. 25). As relief, plaintiff requests compensatory damages against each defendant totaling a minimum of $50,000, punitive damages against each defendant individually, pre-judgment interest on all economic losses and post-judgment interest, attorney's fees and the costs of the litigation, a trial by jury, and any additional relief as the courts deems just and proper. (Doc. 27, p. 28).

## DISCUSSION

Title 28 U.S.C. § 1915 mandates that the district court dismiss a civil rights complaint if the complaint: 1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or 2) seeks monetary relief from a defendant who is

immune from such relief. 28 U.S.C. § 1915A. The court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). A complaint is also subject to dismissal for failure to state a claim when its allegations, on their face, show that an affirmative defense bars recovery on the claim. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) (reiterating that principle).

Official Capacity Claims

      First, as previously instructed in the court's prior amend order, plaintiff's damages claims against the defendants in their official capacities are barred by the Eleventh Amendment. "Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court." *Gamble v. Fla. Dep't of Health and Rehabilitative Servs.*, 779 F.2d 1509, 1511 (11th Cir.

1986); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309-10, 105 L. Ed. 2d 45 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." (citations omitted)).  A suit against a state employee in his or her official capacity is deemed a suit against the state for Eleventh Amendment purposes.  *Will*, 491 U.S. at 71, 109 S. Ct. 2304; *Gamble*, 779 F.2d at 1512 (holding that the Eleventh Amendment "will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C.A. § 1983.").  Plaintiff's claims against the defendants in their official capacities must be dismissed.

<u>Fourteenth Amendment Claims</u>

Plaintiff also alleges violations of his Fourteenth Amendment due process and equal protection rights.  In *Sandin v. Conner*, 515 U.S. 472, 478, 484, 115 S. Ct. 2293, 132 L .Ed. 2d 418 (1995), the Supreme Court recognized only two instances in which a prisoner may claim a constitutionally protected liberty interest which implicates constitutional due process concerns:  (1) when actions of prison officials have the effect of altering the inmate's term of imprisonment, and (2) where a prison restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Without either the loss of gain-time credits or "atypical" confinement, the Due Process Clause itself affords no protected liberty interest that invokes procedural protections.  *Sandin v. Conner*, 515 U.S. at 487.

Because plaintiff lost no gain-time, and because placement into a mental health cell and on "strip" are not "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," 515 U.S. at 486, plaintiff cannot state a plausible claim for violation of his due process rights in connection with the disciplinary hearings or placement in confinement.  *See e.g.*, *Sandin*, 515 U.S. at 486 (holding that thirty-day placement in disciplinary confinement was not atypical or significant enough to trigger due process protection); *Rogers v. Singletary*, 142 F.3d 1252 (11th Cir. 1998) (finding that inmate failed to show deprivation of a protected liberty interest where the inmate was in segregated confinement for two months); *see also, e.g., Smith v. Reg'l Dir. Fla. Dep't. of Corr.*, 368 F. App'x 9, 13 (11th Cir. 2010) (finding that inmate failed to state a claim for a due process violation where he was subjected to confinements of fifteen and thirty days in disciplinary confinement); *Perez v. Humphries*, No. 1:11cv180/RS/GRJ, 2011 WL 6960817, at *3 (N.D. Fla. 2011) (concluding that plaintiff's placement in disciplinary confinement for sixty days did not implicate a liberty interest protected by procedural due process), *Report and Recommendation adopted*, 2012 WL 32566 (N.D. Fla. Jan. 6, 2012).  As to plaintiff's claim that the defendants violated his equal protection rights under the Fourteenth Amendment, plaintiff has put forward no facts evidencing such a violation.  *See Wright v. Butts*, 953 F. Supp. 1352, 1360 (M.D. Ala. 1996) ("In order to prove a violation of the equal protection clause, the plaintiff 'must show that the challenged action was 'taken at least in part' because of, not 'in spite of,' its adverse effects upon an identifiable group.'" (quoting *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979))).  Accordingly, plaintiff's Fourteenth Amendment claims should be dismissed.

First Amendment Claims

Throughout the first amended complaint plaintiff argues that the defendants violated his First Amendment rights. After review of the complaint, plaintiff does not put forward facts indicating that the defendants committed a First Amendment violation. Although plaintiff does not specifically make a claim for retaliation, he pleads that the defendants frequently wrote disciplinary reports in a concerted effort to retaliate against him for the filing of grievances against staff. "[A]n inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying the charge after being afforded adequate due process." *O'Bryant v. Finch*, 637 F.2d 1207, 1215 (11th Cir. 2011). Plaintiff indicates in his complaint that he was found guilty of the conduct alleged in the disciplinary reports at his disciplinary hearings. (Doc. 27, pp. 15, 21). The allegations of plaintiff's complaint indicate that plaintiff was afforded all the process that was due. He may not now relitigate the disciplinary actions under the guise of a civil rights suit. Accordingly, under the law of the Eleventh Circuit, plaintiff cannot state a claim of retaliation based upon the various disciplinary reports, which were upheld.

Supervisory Liability Claims

Plaintiff also seeks to hold Warden Ellis and Secretary McNeil liable in their supervisory capacities. Plaintiff, however, has not plead any facts demonstrating Warden Ellis or Secretary McNeil's direct involvement in the incidents underlying the complaint. Plaintiff cannot hold defendants Ellis and McNeil individually liable for the alleged misconduct of their subordinates on the basis of their supervisory roles. "It is well established in this Circuit that supervisory officials are not liable

under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "The mere right to control, without any control or direction having been exercised and without any failure to supervise, is not sufficient to support 42 U.S.C. § 1983 liability." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n.58 (1979). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The Eleventh Circuit in *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008), set forth the limited circumstances in which a causal connection can be shown sufficient to render a supervisor liable on a § 1983 claim. The causal connection can be established:

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1322 (*citing West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)).

As to Ellis, plaintiff apparently seeks to demonstrate a causal connection by claiming defendant Ellis failed to properly screen, train, supervise, discipline, or terminate his subordinates. Plaintiff also alleges a history of widespread abuse put defendant Ellis on notice. Plaintiff does not, however, plead any other specific

instances of "abuse" besides his own and advances only conclusory assertions that such instances exist. In fact, plaintiff pleads no facts indicating defendant Ellis was on notice of his subordinates' conduct and points to no custom or policy which would lead to deliberate indifference to plaintiff's constitutional rights.

As to defendant McNeil, plaintiff similarly claims that McNeil was aware of the need for further "training, or supervision, or discipline." (Doc. 27, p. 25). Plaintiff posits that McNeil was on notice because of "force reports and similar documents, videotapes, inmate complaints, attorney complaints, and personal observation" that employees at Santa Rosa CI were using excessive amounts of chemical agents and writing false disciplinary reports as punishment. Plaintiff again does not point to any specific incidents that would have informed McNeil of the conduct complained of in the complaint. Despite plaintiff's contentions, plaintiff's filing of grievances is not sufficient to impute the requisite notice to defendants McNeil and Ellis. *See Hendrix v. Tucker*, 545 F. App'x 803, 805 (11th Cir. 2013) (finding plaintiff's administrative grievances and state court litigation not sufficient to impose the notice necessary for supervisory liability). A contrary rule would allow a plaintiff who simply files serial grievances and lawsuits to improperly bootstrap a supervisory liability claim. Even were the plaintiff's own grievances enough to crack the door, here plaintiff has not shown that the incidents alleged were so "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley*, 193 F.3d at 1269. In sum, plaintiff has pled only conclusory assertions of notice, which is not sufficient to establish the causal connection necessary to impose supervisory liability on defendants McNeil and Ellis. *See Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (noting that a complaint

must allege the relevant facts "'with some specificity" and that "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory"). Accordingly, defendants Ellis and McNeil should be dismissed from the action.

<u>Deliberate Indifference to Plaintiff's Medical Condition</u>

Next, plaintiff seeks to establish liability as to defendants Austin and McArthur for "failure to treat." (Doc. 27, p. 24). Assuming plaintiff is attempting to assert a claim of deliberate indifference to his medical condition, for purposes of an Eighth Amendment claim, such has not been accomplished. To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must meet three elements. First, the plaintiff must demonstrate "an objectively serious medical need" so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations and citations omitted). "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal marks omitted). The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle*, 429 U.S. at 105). Deliberate indifference is established only when the plaintiff demonstrates that the official knew of and disregarded an excessive risk to his health or safety; in other words, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed],

and he must also [have] draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official's response must have been so inadequate as to "constitute an unnecessary and wanton infliction of pain" and not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258. Notably, where the inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)); *see also Woody v. Cronic*, 401 F. App'x. 509, 512 (11th Cir. 2010) (unpublished opinion) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference."). Indeed, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033; *Murrell v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[3] In order to satisfy the final element of an Eighth Amendment claim, a plaintiff must show that the official's deliberate indifference caused his injury. *Taylor*, 221 F.3d at 1258; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

Delay in providing "diagnostic care and medical treatment known to be necessary" can qualify as deliberate indifference. *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

for non-medical reasons, a case of deliberate indifference has been made out."). That delay, however, must be "tantamount to unnecessary and wanton infliction of pain," and "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994). The Eleventh Circuit has found cognizable deliberate indifference claims when prison officials delayed treatment for life-threatening emergencies and in "situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Hill* at 1187. "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation." *Id*. at 1187-88.

Here, plaintiff's complaint indicates that he went to seek medical treatment with defendants McArthur and Austin after he had already showered. Defendant Austin considered plaintiff's condition and ordered him to file a "sick call"–as consistent with jail policy–before he could be seen by the medical department. Similarly, plaintiff saw defendant McArthur after he had showered, and defendant McArthur also told plaintiff to submit a sick call so that he could be seen by medical staff. Plaintiff has not demonstrated the necessary intent by defendants Austin or McArthur to punish plaintiff or that their conduct caused or exacerbated his injuries. Instead, plaintiff's complaint merely shows that defendants Austin and McArthur were following standard proper procedures and directed plaintiff to file a sick call request prior to being seen by medical staff. Notably, plaintiff avers that he was put on "strip" following these encounters and appears to have never filed a subsequent

sick call request for medical treatment.[4]  Accordingly, plaintiff's claim against defendants Austin and McArthur fails to state a cause of action under § 1983 and should be dismissed.

Eighth Amendment Claims

As for Officers Raybon, John Doe, Gielow, Given, and Thomas, a viable claim under § 1983 requires plaintiff to establish two essential elements:

> 1. the conduct complained of was committed by a person acting under color of state law; and
>
> 2. this conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 1912, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).  "To show a violation of [his] Eighth Amendment rights, Plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1319 (11th Cir. 2005 (quotation omitted).  "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 1319-20 (quotations omitted).  Simple negligence is not actionable under § 1983, and a plaintiff must allege "a conscious or callous indifference to a prisoner's rights." *Williams v.*

---

[4] Importantly, neither defendant Austin nor defendant McArthur appears to have had any involvement in or been aware of plaintiff's placement on strip and inability to file a sick call request.

*Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). Some of the ways in which prison officials might avoid Eighth Amendment liability include: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1982-83, 128 L. Ed. 2d 56 (1994).

As gleaned from the complaint, plaintiff seeks to hold defendant Raybon liable for an allegedly false disciplinary report, which was later found to be valid at a later disciplinary hearing, and because defendant Raybon did not assist plaintiff with his last minute court filing. Plaintiff, however, admits that he was eventually found guilty of the conduct underlying the disciplinary report at subsequent hearings. (Doc. 27, pp. 15, 21). Moreover, plaintiff has not plead that defendant Raybon sprayed him with pepper spray or caused any injury, physical or otherwise. Plaintiff has not plead adequate facts to hold defendant Raybon liable for an Eighth Amendment violation under § 1983.

The allegations against defendants John Doe, Gielow, Given, and Thomas, require further discussion. "The Eighth Amendment's proscription of cruel and unusual punishments . . . governs prison officials' use of force against convicted inmates." *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). "[I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the

possible harms to inmates against whom force might be used." *Whitley v. Albers*, 475 U.S. 312, 320, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986). Thus, "[w]here a prison security measure is undertaken to resolve a disturbance, . . . that indisputably poses significant risks to the safety of inmates and prison staff, . . . the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id*. at 320-21, 106 S. Ct. at 1085 (internal quotation marks omitted).

The Supreme Court has articulated the standard for determining whether prison officials are entitled to judgment as a matter of law on an excessive force claim:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

*Id*. at 322, 106 S. Ct. at 1085. The Supreme Court outlined five factors relevant to ascertaining whether force was used "maliciously and sadistically for the very purpose of causing harm": (1) the extent of the injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. *Campbell*, 169 F.3d at 1375 (*citing Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085); *see also Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (applying the same five factor test set forth in *Whitley* ).

As to defendant John Doe, plaintiff seeks to establish liability because Doe ordered plaintiff be sprayed with pepper spray after plaintiff set off the fire sprinkler. In a jail environment, order and compliance with the regulations are vital, and the disruption resulting from someone pulling a fire sprinkler is significant. The potential danger and chaos caused by such an act– especially where inmates are unable to free themselves and flee from a fire–is great. Moreover, in light of the difficulty of subduing an inmate covered in water, administration of pepper spray would not appear to be excessive, and indeed strikes one as objectively less extreme than direct physical force. As such, plaintiff has not stated a cause of action under § 1983 against defendant John Doe, who should be dismissed from the complaint.

As to the remaining defendants, Gielow, Given, and Thomas, plaintiff's allegations will be construed as cresting the bar for Eighth Amendment violations. Accordingly, service of the complaint upon these defendants is appropriate at this time.

Accordingly, it is ORDERED:

1. The undersigned's previous Report and Recommendation (doc. 28) is VACATED.

And, it is respectfully RECOMMENDED:

1. That this action be DISMISSED without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) against defendants Ellis, McNeil, Raybon, John Doe (captain), Austin, and McArthur, for plaintiff's failure to state a claim upon which relief may be granted.

2. That this case be remanded to the undersigned for further proceedings on the following claims:

      a.  Plaintiff's individual capacity claims for compensatory and punitive damages against defendants Gielow, Given, and Thomas for their alleged Eighth Amendment violations.

At Pensacola, Florida this 19th day of May, 2014.

        */s/ Charles J. Kahn, Jr.*
        **CHARLES J. KAHN, JR.**
        **UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).