UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CLARENCE FRANK STEPHENSON,

      Plaintiff,

v.                                  Case No. 3:11cv455/RV/CJK

D. ELLIS, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the court on defendant Raybon's "Amended Motion to Dismiss with Prejudice" (doc. 49) and plaintiff's response in opposition (doc. 57). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  Upon careful consideration of the record, the parties' submissions, and the relevant law, the court concludes defendant Raybon's motion to dismiss should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida penal system currently confined at Union Correctional Institution.  Plaintiff initiated this lawsuit on September 22, 2011, by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). On August 26, 2014, plaintiff filed his second amended complaint, the operative pleading in this action.  (Doc. 36).  Plaintiff's second amended complaint names six employees of Santa Rosa Correctional Institution ("SRCI") as defendants: Warden David Ellis, Lieutenant Walter L. Gielow, Captain Rhodes,

Sergeant F.R. Given, Sergeant Steven S. Thomas, and Officer Gregory Raybon. (Doc. 36, p. 1-2).[1]

Plaintiff's second amended complaint contains the following factual allegations.  Plaintiff was a close management inmate at SRCI and known as a "grievance filer." (Doc. 36, p. 11).  Around 2:00 p.m. on September 5, 2007, four or five corrections officers entered Wing-2 of D-Dormitory to move an inmate between cells.  (*Id.*).  Plaintiff called Officer Raybon over to his cell and asked Raybon to check on the status of legal materials plaintiff provided to a law clerk for copying on September 4, 2007.  (*Id.*).  Raybon "told Plaintiff he had nothing to do with it, and that Plaintiff had to take that up with the law library." (*Id.*).  Raybon left plaintiff's cell and sat down at a table in Wing-2.  (*Id.*).  Plaintiff then stopped Sergeant Given; plaintiff informed Given his legal deadline was that day (September 5, 2007), and he needed the copies of his legal materials.  (*Id.*).  Plaintiff also informed Given that Raybon could confirm plaintiff had submitted documents for copying because Raybon was the officer who opened the hatch to plaintiff's cell to allow the law clerk to retrieve the documents.  (*Id.*, p. 11-12).  Given instructed Raybon to call the law library and check on the status of plaintiff's copies.  (*Id.*, p. 12).  Raybon returned to plaintiff's cell and told plaintiff "the librarian said, 'you had (50) days to file to the court.  Why you waited so long?'" (*Id.*).  As Raybon left plaintiff's cell, Lieutenant Gielow stopped Raybon and ordered him to write plaintiff a "bogus" disciplinary report ("DR") for disorderly conduct "which would lead to the misuse/excessive force upon the plaintiff." (*Id.*).  Gielow walked to plaintiff's cell "mean-muggin him with

---

[1]  The references to document and page numbers will be to those automatically generated by the CM/ECF system.

the look of hatred in his eyes and stated maliciously, 'I have no rap for you. I wanna gas your ass for writing complaints/grievances against Lt. Swartz.'"[2]  (*Id.*).  Plaintiff alleges Raybon wrote and Gielow approved the DR for disorderly conduct as retaliation for grievances plaintiff filed against prison staff.  (*Id.*).

On September 9, 2007, Sergeant Thomas went to plaintiff's cell to investigate the DR written by Raybon.  (*Id.*).  Plaintiff called his cellmate, David Patterson, as a witness but plaintiff "believe[s] [he] made no statement, but signed and dated the witness statement form, as if he had been intimidated by staff."  (*Id.*).  Plaintiff submitted a written statement in which he denied kicking his cell door or being disorderly.  (*Id.*).  The statement also indicated Gielow ordered Raybon to file the false DR as retaliation for filing grievances and Gielow threatened to gas plaintiff for his complaints against Swartz.  (*Id.*, p. 12-13).  Plaintiff requested the quad surveillance video to support his claims.  (*Id.*, p. 13).  On September 11, 2007, plaintiff filed a grievance notifying Warden Ellis that Gielow had threatened to spray plaintiff with chemical agents.  (*Id.*).  Plaintiff requested a transfer away from SRCI, which was denied.  (*Id.*).  At the DR hearing held on September 13, 2007, Gielow, as a hearing team member, read "plaintiff's written statement and disposition of videotape/audio tape evidence form[.]"  (*Id.*).  Gielow, however, was excused from serving as a hearing team member because he approved the DR written by Raybon.  (*Id.*).  Plaintiff was found guilty of disorderly conduct and sentenced to thirty days in confinement.  (*Id.*).

After the hearing on September 13, 2007, Gielow filed another DR against plaintiff for disobeying orders; Gielow purportedly observed plaintiff screaming at

---

[2] Plaintiff filed "numerous complaints" against Lieutenant Swartz in 2007.  (Doc. 36, p. 12).

another inmate.[3]  (*Id.*).  During the investigation into the September 13, 2007 DR, plaintiff denied Gielow's accusations and requested audio and video evidence.  (*Id.*, p. 14).  At the DR hearing on October 2, 2007, plaintiff was found guilty and sentenced to thirty days in confinement.  (*Id.*).

On the morning of September 14, 2007, plaintiff alleges Gielow and Given approached plaintiff's cell and stated, "'[G]et ready!  We about to spank you in a few minutes.'" (*Id.*).  Shortly thereafter, Gielow and Given pretended to counsel plaintiff over yelling and kicking his cell door.  (*Id.*, p. 14).  Gielow and Given then sprayed plaintiff with "excessive amounts" of chemical agents three times over approximately a thirty-minute period.  (*Id.*, p. 14-15).  While plaintiff was washing the chemical agents off, Gielow informed plaintiff he was being sprayed because he "wrote all them grievances on staff" and the Warden was upset.  (*Id.*, p. 16).  Plaintiff was not allowed to properly decontaminate and suffered the effects of the chemical agents "for at least two weeks[.]"  (*Id.*, p. 16-17).  Gielow ordered that plaintiff be placed on recreation and property restriction.  (*Id.*, p. 17).  Given, on orders from Gielow, wrote plaintiff a false DR on September 14, 2007; Gielow approved the DR.  (*Id.*, p. 17-18).  Plaintiff was found guilty of the DR at a hearing on September 20, 2007 and sentenced to thirty days of confinement to run consecutive to the thirty days of confinement imposed on September 13, 2007.  (*Id.*, p. 18).  On October 2, 2007, after plaintiff filed three grievances, the DR was overturned on a technical error.  (*Id.*).

---

[3] Plaintiff asserts this DR was never approved.  (Doc. 36, p. 13).  Although the box labeled "Approved" is not checked on the Disciplinary Report Worksheet, it appears Gielow both wrote and approved the DR.  (*Id.*, p. 81).

On September 17, 2007, Gielow sent Sergeant Thomas to plaintiff's cell "to act/or fake like the plaintiff was causing a problem." (*Id.*). After warning plaintiff to cease the disturbance, Gielow ordered Thomas to spray plaintiff with chemical agents while he was on "strip." (*Id.*, p. 19). The pain from the chemical agents was so intense plaintiff was forced to activate the sprinkler system in his cell for relief. (*Id.*). Gielow ordered Thomas to apply chemical agents a second time. (*Id.*). Plaintiff informed Captain Rhodes that he was in extreme pain. (*Id.*, p. 19-20). Plaintiff claims Rhodes, more concerned about the sprinkler system than plaintiff's health, ordered another application of chemical agents. (*Id.*, p. 20). Plaintiff was sprayed for a third time by Gielow and Thomas. (*Id.*). Plaintiff was again denied proper decontamination and medical treatment. (*Id.*, p. 20-21). Based on the events of September 17, 2007, Thomas wrote plaintiff three DRs: one for yelling and kicking his cell door; one for removing the pin from the sprinkler system; and one for attempting to strike staff with a rag. (*Id.*, p. 21). Plaintiff was found guilty of all three DRs on September 25, 2007. (*Id.*, p. 22). Plaintiff filed multiple grievances protesting his treatment but did not obtain relief. (*Id.*). Plaintiff was transferred to Union Correctional Institution on October 29, 2007. (*Id.*, p. 23).

Based on these allegations, plaintiff contends defendant Raybon violated his rights under the First and Eighth Amendments. (*Id.*, p. 23). For relief, plaintiff requests compensatory and punitive damages. (*Id.*, p. 28). Now pending before the court is defendant Raybon's motion to dismiss for failure to state a claim (doc. 49), and plaintiff's response in opposition. (Doc. 57).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss a complaint where the complaint fails "to state a claim upon which relief can be granted."  In considering a Rule 12(b)(6) motion, the court reads plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519 (1972), accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice.  5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008). Further, only <u>well pleaded</u> factual allegations are taken as true and only <u>reasonable</u> inferences are drawn in favor of the plaintiff.  *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *Marrero v. City of Hialeah*, 625 F.2d 499, 502 (5th Cir. 1980);[4] *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true").  Mere "labels and conclusions" are not accepted as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation");  *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth).

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

As the Supreme Court reiterated in *Iqbal, supra*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A complaint or counterclaim must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim.  *Id.*  The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570.

DISCUSSION

<u>First Amendment Claim</u>

Plaintiff contends Gielow ordered Raybon to write plaintiff a false disciplinary report as retaliation for filing grievances against prison staff.  Raybon asserts plaintiff cannot state a claim for retaliation against Raybon because plaintiff was convicted of the disciplinary report Raybon wrote after being afforded due process. (Doc. 49).  In response, plaintiff claims he has sufficiently pled all the elements of a First Amendment retaliation claim and established that Raybon was "subjectively motivated to discipline" plaintiff for exercising his First Amendment right to file grievances.  (Doc. 57).

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir.2003).  "It is an established principle of constitutional law that an

Case No. 3:11cv455/RV/CJK

inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir.2008). "[A]n inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints." *Id.* (*citing Farrow*, 320 F.3d at 1248). "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Id.* However, "[i]f a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report." *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011).

Due process requires that prisoners must receive: "(1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action." *Id.* at 1213. (*citing Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). "Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel." *Id.* at 1215. "To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found

guilty of an actual disciplinary infraction after having filed a grievance." *Id.* at 1216.

Plaintiff alleges Officer Raybon retaliated against him for filing grievances by charging plaintiff in a false DR for disorderly conduct on September 5, 2007.  (Doc. 36, p. 12).  Plaintiff, however, cannot successfully state a claim for retaliation because the allegations in the complaint and the exhibits attached thereto demonstrate plaintiff was afforded due process and that evidence supported the disciplinary team's finding.[5]  Plaintiff received advance written notice of the charged infraction because Sgt. Thomas, the officer investigating the DR, delivered a copy of it to plaintiff on September 9, 2007.  (*Id.*, p. 68).  Plaintiff was also allowed to call witnesses and submit evidence.  During Sgt. Thomas' investigation, plaintiff called his cellmate David Patterson as a witness, who "plaintiff believe made no statement, but signed and dated the witness statement form, as if he had been intimidated by staff."[6]  (*Id.*, p. 12, 74).  Plaintiff also submitted his own written statement (*Id.*, p. 12-13, 75), and requested review of surveillance footage from the prison (*Id.*, p. 13, 76).  The disciplinary hearing team reviewed the video footage as requested.  (*Id.*, p. 78).  Plaintiff attempted to call Sgt. Given and Officer Raybon as witnesses but, as Raybon wrote the DR and Given had already submitted a statement as part of Sgt. Thomas' investigation, his request was denied.  (*Id*., p. 78).  The disciplinary hearing team

---

[5] In ruling on Raybon's motion to dismiss, the court may consider not only the complaint but also the exhibits attached to it*.  Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.") (quotation marks omitted)

[6] Plaintiff alleges no facts to support the claim that Patterson may have been intimidated by staff.  Plaintiff has attached a copy of Patterson's witness statement form to his complaint.  (Doc. 36, p. 74).  The narrative portion of Patterson's witness statement form appears to have been redacted.

found plaintiff guilty of disorderly conduct and sentenced him to thirty days of disciplinary confinement. (*Id.*, p. 13, 78). Plaintiff was provided with the following written statement by the disciplinary team outlining the evidence relied on and the reasons for the disciplinary action:

> Based in part on the written statement of Ofc. Raybon and confirmed in the investigation that on 09/05/07 at approx. 2:00 p.m., I/M Stephenson, Clarence DC # 185325 was disorderly when he was observed yelling and kicking on his cell door. I/M Stephenson requested that camera be reviewed. Based on review of the camera or camera placement and equipment operation, the videotape shows Ofc. Raybon and Sgt. Given at cell D2119 and also show Sgt. Given counseling with I/M Stephenson. Camera does not have audio. I/M Stephenson also requested additional witness, Ofc. Raybon and Sgt. Given; however, the team did not consider as Ofc. Raybon wrote the report and Sgt. Given had already provided a witness statement during the investigation. All witness statements and evidence were read and considered by the disciplinary hearing team.

(*Id.*, p. 78) (errors in original). Officer Raybon's statement and the video footage provide "some evidence" that plaintiff actually committed the charged infraction. *See Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) ("[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker."); *Longstreth v. Franklin*, 240 F. App'x 264, 267 (10th Cir. 2007) (stating that an incident report satisfies the "some evidence" requirement of Hill ); *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993) (stating that disciplinary actions may be taken based only on a guard's report, if found credible, even when there is substantial evidence to the contrary). The disciplinary team relied upon facts in supporting their finding of guilt and did not

reach an arbitrary and capricious decision.  The minimum requirements of due process were met.  Notably, plaintiff's response to Raybon's motion to dismiss does not contend he was denied due process during the disciplinary process.  (Doc. 57).  Plaintiff, therefore, does not state a claim against Raybon for retaliation.

Eighth Amendment Claim

Plaintiff's response to Raybon's motion to dismiss contends the motion fails to address Raybon's participation "in the conspiracy to unlawfully punishment [sic] Plaintiff by torturous means such as repeatedly gassing Plaintiff and pressuring the medical technicians to not allow [showering] of Plaintiff until maximum pain could occur." (Doc. 57, p. 1).  Plaintiff's complaint, however, does not allege Raybon participated in or was otherwise associated with the application of chemical agents or denial of medical treatment.  Plaintiff's allegations concerning Raybon are limited to the events of September 5, 2007, the day Raybon wrote the DR for disorderly conduct.  By plaintiff's allegations, chemical agents were not used on him that day.  Plaintiff's conclusory assertion of a conspiracy is insufficient to link Raybon to any possible Eighth Amendment violation.  *See Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").  Plaintiff's Eighth Amendment claims against Raybon should be dismissed.

## CONCLUSION

Plaintiff's complaint and the exhibits attached thereto demonstrate plaintiff was afforded due process at the disciplinary hearing and there was sufficient evidence to support the disciplinary team's findings.  Thus, plaintiff has failed to state a First Amendment retaliation claim against Raybon.  In addition, plaintiff has failed to

allege facts suggesting Raybon was involved in a violation of plaintiff's rights under the Eighth Amendment.  Raybon's motion to dismiss, therefore, should be granted.

Accordingly, it is respectfully RECOMMENDED:

That defendant Raybon's amended motion to dismiss (doc. 49) be GRANTED and plaintiff's claims against Raybon be DISMISSED WITH PREJUDICE.

At Pensacola, Florida this 13th day of May, 2015.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S.Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.